IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN BENNET, )
)
       Plaintiff, )
) No. 12 C 2807
   v. )
) The Honorable Virginia M. Kendall
C.H. ROBINSON COMPANY; C.H. )
ROBINSON WORLDWIDE, INC.; C.H. )
ROBINSON COMPANY GROUP LONG )
TERM DISABILITY PLAN, )
)
       Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff John Bennet ("Plaintiff") filed a two-count complaint, pursuant to the Employees Retirement Income Security Act, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), against the C.H. Robinson Company Group Long Term Disability Plan (the "Plan") as well as C.H. Robinson Company and C.H. Robinson Worldwide, Inc. (the "Corporate Defendants"). Plaintiff worked for the Corporate Defendants for two years and on the last day of his employment he was deemed to be fully disabled. Plaintiff seeks long term disability benefits and claims he sought such benefits during the course of his employment. The Plan disagrees and claims he has failed to exhaust his administrative remedies. The Plan moved to dismiss Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies. In the alternative, the Plan seeks a remand to the plan administrator for a determination on Plaintiff's claim. Separately, the Corporate Defendants move the Court to dismiss Plaintiff's claim against them pursuant to Rule 12(b)(6) for failure to state a claim. For

1

the reasons set forth below, the Plan's motion to dismiss is denied but the motion for remand is granted. The Corporate Defendants' motion to dismiss is denied as moot.

## **BACKGROUND**

The following facts are taken from Plaintiff's Complaint and are assumed to be true for purposes of the Motion to Dismiss. *See Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 520 (7th Cir. 2003); *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Plaintiff worked for T-Chek, a subsidiary of C.H. Robinson, as a Government Relations Manager from February 19, 2007 through January 5, 2009. (Complaint, Doc. 1, at ¶¶ 9-10.) During Plaintiff's employment, he began to suffer from serious health problems including heart problems. (*Id.* at ¶ 10.) On January 5, 2009, C.H. Robinson terminated Plaintiff's employment in a purported cost reduction effort. (*Id.*)

While employed at T-Chek, Plaintiff paid for long-term disability insurance benefits through an employee sponsored plan. (*Id.* at ¶ 18.) In February 2009, Plaintiff contacted C.H. Robinson's human resources department and asked how he could apply for those disability benefits. (*Id.*) He was told by C.H. Robinson's human resources department that because he did not receive any short-term disability benefits, he could not claim long-term disability benefits. (*Id.* at ¶ 19.) Plaintiff asked if he could appeal the decision. C.H. Robinson told him that he could not. (*Id.*)

However, the statements made by C.H. Robinson's human resources department were not accurate because there was no requirement that a participant first receive short-term disability benefits in order to receive long-term disability benefits. (*Id.* at ¶ 20.) Rather, the Plan only requires that a 180 waiting-period must elapse before a participant can begin to receive payment of long-term disability benefits. (*Id.*) Plaintiff relied on

C.H. Robinson's representations and did not make a claim for disability benefits at that time. (*Id.* at ¶ 22.)

Subsequently, the Social Security Administration determined that Plaintiff was unable to perform or pursue any substantial gainful activity as of January 5, 2009. (*Id.* at ¶ 23.) Plaintiff contacted C.H. Robinson again to inquire about disability benefits. (*Id.* at ¶ 24.) On July 12, 2011, Plaintiff sent C.H. Robinson's human resources department a letter by certified mail, which stated:

> I was employed by T-Chek Systems, Inc. from February 19, 2007 to January 5, 2009. On June 25, 2011 the Social Security Administration found that I became totally disabled on Janury 5, 2009, my last day of employment with T-Chek. I wish to apply for Long Term Disability benefits. Please send me the information necessary to do this.

(*Id.* at ¶ 25; Ex. 2.)

After getting no response from C.H. Robinson's human resources department, Plaintiff sent C.H. Robinson's CEO a letter on August 16, 2011, stating:

> I am a former employee of T-Chek Systems, Inc. On July 12th of this year I requested from your Human Resources Department information on how to file a disability claim (copy enclosed). As of this date there has been no reply. Please ask your Human Resources Department to provide me with the requested information, and a Summary Plan Description (SPD) of my benefits.

(*Id.* at ¶ 27; Ex. 3.)

Soon thereafter a C.H. Robinson human resources department member called Plaintiff and provided him with the telephone number to the CIGNA Disability Claim Reporting Line for Employees of C.H. Robinson. (*Id.* at ¶ 28.) That same day, Plaintiff called the CIGNA Disability Claim Reporting Line for Employees and spoke with Scott Anderson. (*Id.* at ¶ 29.) Plaintiff made a claim for disability benefits. (*Id.*) After the conversation ended, Plaintiff sent Scott Anderson a letter. (*Id.*) This letter stated:

3

> That you so much for your time on the telephone today. I am requesting a copy of the Long Term Disability insurance policy that covered me while I was employed by the T-Chek Systems, Inc. subsidiary of C.H. Robinson Worldwide, Inc. from February 19, 2007 until January 5, 2009. If you require any more information from me, please let me know. Thank you for your time and consideration in this matter.

(*Id.* at Ex. 5.)

Anderson sent Plaintiff a copy of the LTD insurance policy; however neither Anderson nor anyone else from CIGNA responded to his claim for benefits. (*Id.* at ¶ 30.) On November 21, 2011, through counsel, Plaintiff requested all of the plan documents from C.H. Robinson and reiterated that he had made a claim for benefits over the telephone but had not received a response. (*Id.* at ¶ 32.) Plaintiff never received a response to the November 21, 2011 letter. (*Id.* at ¶ 33.)

## **LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy,* 51 F.3d at 717. To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations are not required, but the plaintiff must allege facts that, when "accepted as true...'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal,* 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *See id.*

However, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 454-55 (7th Cir. 1998) (citing *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 991 (7th Cir. 1991)). A "plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Id.* at 455.

## DISCUSSION

I.   **The Plan's Motion to Dismiss**

Under ERISA, "[a] civil action may be brought...by a participant...to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Although 29 U.S.C. § 1132(a)(1)(B) "provide[s] that an aggrieved party may file a civil action to redress alleged ERISA violations, [the statute] do[es] not state whether exhaustion of administrative remedies is a precondition to filing that action." *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 466 (7th Cir. 1986). However, "because ERISA directs employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims," the Seventh Circuit has "interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute." *Edwards v. Briggs & Stratton Ret. Plan,* 639 F.3d 355, 360 (7th Cir. 2011) (citing *Powell v. A.T.&T. Commc'ns, Inc.,* 938 F.2d 823, 826 (7th Cir. 1991)). A court may dismiss a claim for benefits under the exhaustion doctrine if the complaint reveals that the plaintiff has not exhausted his or her administrative remedies. *See, e.g., Richardson v. Astellas U.S. LLC*

*Employee Ben. Plan and Life Ins. Co. of North America,* 610 F. Supp. 2d 947, 952 (N.D. Ill. 2009); *Gupta v. Freixenet, USA, Inc.,* 908 F. Supp. 557, 564, (N.D. Ill. 1995).

The exhaustion requirement serves a number of purposes. It promotes the "informal, non-judicial resolution of disputes about employee." *Edwards,* 639 F.3d at 361; *see also Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244-45 (7th Cir. 1983) ("[T]he institution of...administrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned.") (internal citations omitted). The exhaustion requirement also assists district courts because it requires the parties, in advance of filing suit, "to develop a full factual record." *Edwards,* 639 F.3d at 361 (*quoting Janowski v. International Board of Teamsters Local No. 710 Pension Fund,* 673 F.2d 931, 935 (7th Cir. 1982)); *see also Ames v. American National Can Co.,* 170 F.3d 751, 756 (7th Cir. 1999) (noting that, through internal plan procedures, "the facts and the administrators interpretation of the plan may be clarified for the purposes of subsequent judicial review").

However, "the decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court." *Salus v. GTE Directories Serv. Corp.,* 104 F.3d 131, 138 (7th Cir. 1997) (*quoting Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 650 (7th Cir. 1996)). Moreover, "[a]n ERISA plaintiff's failure to exhaust administrative remedies may be excused where there is a lack of meaningful access to review procedures, or where pursuing plan remedies would be futile." *Edwards,* 639 F.3d at 361 (internal citations omitted).

In this case, the Plan argues that the Court should remand the Plaintiff's claim and dismiss his case because the Plaintiff failed to exhaust his administrative remedies. Specifically, the Plan argues that Plaintiff failed to exhaust his administrative remedies because the Plaintiff never actually submitted a claim for long term benefits to the Plan. However, this argument is contradicted by the plain allegations in the Complaint. The Complaint alleges that the Plan allows a beneficiary to make a claim for benefits by telephonic means. (Doc. 1 at ¶ 36.) It further alleges that: (1) a C.H. Robinson human resources department employee gave Plaintiff the telephone number at which to call CIGNA to report a claim for disability benefits; (2) Plaintiff called that number and spoke with Scott Anderson at CIGNA on September 20, 2011; (3) during this call, Plaintiff made a claim for disability benefits; and (4) the Plan never responded to his request for benefits. (Doc. 1 at ¶¶ 28-29.)[1] Therefore, Plaintiff clearly alleged that he made a claim for benefits and that the Plan ignored his claim. This is sufficient to establish exhaustion of his administrative remedies.

Title 29 C.F.R. § 2560.503-1(g) requires a plan's administrator to provide a claimant with written or electronic notification of any adverse benefit determination, setting forth a description of the plan's review procedures, the time limits applicable to such procedures, and a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. Title 29 C.F.R. § 2560.503-1(l) provides that:

> Failure to establish and follow reasonable claims procedures. In the case of the failure of a plan to establish or follow claims procedures consistent

---

[1] There is some confusion as to whether CIGNA or the Life Insurance Company of North America ("LINA") is the claims administrator for this plan. The Plan insists the administrator is LINA. Plaintiff insists it is CIGNA. Because this is a motion to dismiss and the veracity of Plaintiff's allegations are assumed, the Court will refer to CIGNA as the claims administrator.

> with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

In interpreting these provisions, other courts have found that if an administrator fails to render a decision on a claim for benefits within the time frame set forth by the ERISA regulations, the claimant is deemed to have exhausted the administrative remedies available under the plan and is entitled to pursue any available remedies under 29 U.S.C. § 1132(a), such as filing suit in district court, on the basis that the plan failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. *See, e.g., Jacobson v. SLM Corp. Welfare Benefit Plan,* No. 08 C 267, 2009 WL 2841086, at *5 (S.D. Ind. Sept. 1, 2009) (Hamilton, J.) (finding that pursuant 29 C.F.R. § 2560.503-1(l), the claim was deemed administratively exhausted when the administrator failed to make a decision on the claim within the forty-five day statutory period); *Gatti v. Reliance Standard Life Insurance Co.,* 415 F.3d 978, 983 (9th Cir. 2005) (holding that "[b]ecause a claimant must exhaust her plan's administrative review procedures before she may bring a suit in federal court, a mechanism is necessary to allow claimants access to the courts in the event that their plan never makes a decision. Thus, [29 C.F.R. § 2560.503-1(l)] gives claimants the ability to access the courts if the administrator does not exercise its discretion within a reasonable time (as established by the regulations)."). The Court agrees with the reasoning of these courts. Therefore, because Plaintiff sufficiently alleged that he submitted a claim but never received a determination, the Plan failed to provide a reasonable claims procedure that would yield a decision on the merits and therefore exhausted his administrative remedies.

The Plan argues that Plaintiff's allegation of making a telephonic claim on September 20, 2011 is contradicted by a letter that Plaintiff sent to Scott Anderson that same day, which is attached to Plaintiff's Complaint as Exhibit 5. The Plan contends that this letter shows that Plaintiff did not submit a formal application for disability benefits; rather, he only requested a copy of the insurance policy. The Plan argues that this warrants dismissal for failure to exhaust because an exhibit to a pleading controls over contrary allegations in the pleading. *See N. Indiana Gun & Outdoor Shows,* 163 F.3d at 455.

Although accurate that an exhibit controls over contrary allegations in a pleading; here, the September 20, 2011 letter that Plaintiff sent to Anderson does not contradict the allegations in Plaintiff's Complaint that he made a claim for benefits to Anderson during their phone conversation. The September 20, 2011 letter states that:

> That you so much for your time on the telephone today. I am requesting a copy of the Long Term Disability insurance policy that covered me while I was employed by the T-Chek Systems, Inc. subsidiary of C.H. Robinson Worldwide, Inc. from February 19, 2007 until January 5, 2009. If you require any more information from me, please let me know. Thank you for your time and consideration in this matter.

(Doc. 1 at Ex. 5.) While this letter does not specifically state that Plaintiff made a claim for benefits during the call, it confirms that the call actually happened. There is nothing in the letter that suggests Plaintiff did not make a claim. Indeed, in drawing all inferences in favor of the Plaintiff, his offer to provide more information to Anderson implies that he did make a claim and is now offering to provide any additional information for purposes of facilitating the processing of the claim. Regardless, nothing in the letter directly contradicts Plaintiff's allegations in his Complaint such that the Court should reject them on a motion to dismiss. Accordingly, the motion to dismiss is denied.

## II. The Plan's Motion for Remand

In the alternative to moving to dismiss the case, the Plan asks the Court to remand the case so that the Plan's claims administrator may make a final administrative decision on Plaintiff's claim. In support of this motion, the Plan submits Anderson's affidavit. In his affidavit, Anderson states that the Plan is "ready and willing to decide any claim Bennet submits, and that [the Plan] would receive any claim that Bennet submits in accordance with ERISA's mandate for full and fair review." (Doc. 30-1, ¶¶ 8-9.)

The Plan's motion for remand is premised on the same argument as its motion to dismiss. Namely that Plaintiff failed to exhaust his administrative remedies prior to filing suit in this Court. However, as described above, Plaintiff's Complaint sufficiently alleges that he did exhaust his administrative remedies because the Plan failed to provide him with a determination on his claim within the time limits set forth under ERISA. *See* 29 C.F.R. § 2560.503-1(l); *see, e.g., Jacobson*, 2009 WL 2841086, at *5.

However, even if a claimant is deemed to have met the administrative exhaustion requirement under the regulations, a district court still has discretion to remand the case to the claims administrator to require actual exhaustion. *See, e.g., Bolduan v. Life Ins. Co. of N. Am.,* No. 12 C 1003, 2012 WL 6553807, at *5 (E.D. Wis. Dec. 14, 2012). It is undisputed that Plaintiff's claim has not been fully processed by the Plan. Congress's intent in drafting ERISA was for plan fiduciaries, and not federal courts, to have primary responsibility for claims processing. *See Powell,* 938 F.2d at 826. The Seventh Circuit has reiterated its strong policy preference for claimants to first exhaust their administrative remedies before a case is litigated in district court. *See, e.g., Edwards,* 639

F.3d at 360-61. In accordance with these policy preferences, the Court finds that remand is appropriate.

Remand would not be futile because the Plan has stated that it is "ready and willing to decide any claim Bennet submits, and that [the Plan] would receive any claim that Bennet submits in accordance with ERISA's mandate for full and fair review." Moreover, remand furthers the interest of judicial economy because either: (1) the claim will be resolved at the administrative level; or if the case is reinstated (2) the Court will have the benefit of a full administrative record. Accordingly, the Court finds that the case should be stayed and Plaintiff's claim shall be remanded to the claim's administrator for a determination. *See, e.g., Bolduan,* 2012 WL 6553807, at *5 (finding that "judicial economy will be better served by staying the proceedings related to plaintiff's ERISA claim, rather than dismissing the claim" in a case where plaintiff met administrative exhaustion requirement under ERISA but the administrator was willing to process the appeal).

Plaintiff's claim is deemed filed as of the date of the entry of this order. The Plan shall have forty-five days to determine whether or not benefits are payable in accordance with the terms of the policy. Any appeal of that determination shall be made and processed in accordance with the terms of the policy. The parties are directed to furnish the Court with a written status report after the Plan makes it determination or after forty-five days have elapsed from the date this order is entered, whichever occurs first.

### III. The Corporate Defendants

Because the case is stayed pending the outcome of Plaintiff's pursuit of his administrative remedies, the Court dismisses Plaintiff's claims against the Corporate

Defendants without prejudice. The Court notes that Plaintiff's purported claim against the Corporate Defendants is conditioned on a factual scenario where Plaintiff's claim is denied by the Plan as untimely. (*See* Doc. 37 at 9.) Since the Plan has not made a formal determination on Plaintiff's claim, any claim against the Corporate Defendants is, accordingly, not ripe for adjudication at this time. Should the Plan deny Plaintiff's claim as untimely, Plaintiff may file an amended complaint against the Corporate Defendants.

## CONCLUSION

For the reasons set forth above, the Plan's Motion to Dismiss is denied but the case is remanded to allow Plaintiff to exhaust his administrative remedies. The case is stayed pending the outcome of the Plaintiff's pursuit of his administrative remedies; however, the parties are directed to provide the Court with a written status report after the Plan makes it determination or after forty-five days have elapsed from the date this order is entered, whichever occurs first. The Court, *sua sponte,* dismisses the claims against the C.H. Robinson Company and C.H. Robinson Worldwide, Inc. without prejudice. The Corporate Defendants' Motion to Dismiss is denied as moot.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 25, 2013